## Spencer Estate

*A. M. Larmore*, for petitioners.

*Joseph E. Harvey*, for respondent.

MACELREE, P. J., October 9, 1962.—In the above entitled matter, Howard T. Pratt and Viola Pratt, executors under the will of C. Harry Spencer, deceased, have filed their petition in a proceeding for declaratory judgments under the Uniform Declaratory Judgments Act. . . .

Decedent left a will dated December 3, 1955. . . .

By the terms of said will, decedent provided, inter alia, as follows:

"Item IV. I give, devise and bequeath unto Bertha Fulton the premises known as #118 West Evergreen Street, West Grove, Pennsylvania, for and during her life or so long as she may desire to live in the same, whichever may be the shorter period, upon the condition that she shall pay all the expenses of maintaining and insuring said premises, the land taxes and other taxes and assessments thereon which may accrue or become payable during her life; and, upon noncompliance with any of said conditions, or upon her death, or when she vacates said premises, I direct my Executors to sell the said real estate and distribute the proceeds thereof in accordance with Item V hereof.

The questions will be discussed in the order in which they have been stated:

(1) *Is Bertha Fulton entitled to use during her lifetime or during the time that she lives at said premises, or entitled to live at said premises, the household goods belonging to said decedent?*

Counsel for Mrs. Fulton predicates her right to use such household furniture upon the decision of the late Judge Van Dusen, in Ritchie's Estate, 4 D. & C. 455.

While we do not feel obliged to follow the conclusions of law reached by Judge Van Dusen, assuming him to have been right in the conclusions which he reached in Ritchie's Estate, this court believes the situation there to be clearly distinguishable from the subject situation.

By the terms of his will, William J. Ritchie provided: "My sister is to occupy her present home during the balance of her life."

Judge Van Dusen reasoned that the picture in testator's mind could have been that of his sister going on after his death just as before. He concluded that under such circumstances the word "home" implied something more than the bare house.

In reaching this conclusion he cited Graham v. Heidrick, 204 Pa. 238. Significantly enough the language in

Graham v. Heidrick was "that after my decease my wife Hannah will occupy my present *home and residence* during her natural lifetime and also my daughter Elizabeth as long as she remains single."

Even the late Mr. Justice Dean, speaking for the Supreme Court in Graham v. Heidrick, conceded that such language was susceptible of conflicting interpretations. In the instant case, we are not confronted by the use of the word, "home."

Whether Item V of decedent's will creates a life estate as contended by counsel for Mrs. Fulton, or whether it gives Mrs. Fulton merely a conditional right to occupy, amounting to but a license or personal privilege as contended by counsel for the executors, we are of opinion and so decree that the will gives no right to Bertha Fulton to use the furniture of the decedent during her lifetime or any shorter period.

(2) *Is Bertha Fulton entitled to receive and convert to her own use the rents from the apartment on the second floor of said premises at 118 West Evergreen Street, West Grove, Pennsylvania?*

Ordinarily, the answer to this question would depend upon whether or not the will of decedent created a life estate for Bertha Fulton.

It is contended by counsel for Mrs. Fulton that if she has a life interest she is entitled to the rents and profits from the premises and it is conceded by counsel for Mrs. Fulton that if she has only a license or privilege she has no right to the rents and profits.

It is contended by counsel for the executors under decedent's will that Bertha Fulton is not entitled to the rents because she does not have a life estate in the premises, but merely a right to occupy.

The situation here is further complicated by a stipulation that in the event Bertha Fulton is not entitled to rents and profits during her lifetime or during the time she lives in the premises she will elect or express

her desire not to live in the same, and a further stipulation that in the event Bertha Fulton is held to be liable for more than $200 of the total cost of the sewer assessment, the connection fee and costs of internal plumbing, she will not elect to live in the premises and express her desire to remove therefrom.

In effect, the position of Bertha Fulton is that under the will she is entitled to the rents and profits during her lifetime or during the time that she lives in the premises, but that she is not liable for the cost of the sewer assessments, the connection fee and costs of internal plumbing, in excess of $200.

This court, in its opinion, is not concerned with whatever election Bertha Fulton may make, but is merely to determine her right to receive and convert to her own use the rents from said apartment.

We must first determine the nature of the estate to which Bertha Fulton is entitled.

The language used by the decedent in Item IV of his will is, in the opinion of this court, free from ambiguity.

"I give, devise and bequeath unto Bertha Fulton the premises known as 118 West Evergreen Street, West Grove, Pennsylvania, for and during her life, or so long as she may desire to live in the same, *whichever may be the shorter period*," states precisely what decedent intended.

Had he intended an estate for life, he would not have added the provision *"or* so long as she may desire to live in the same, *whichever may be the shorter period."*

Decedent further added conditions which would ordinarily be incidental to a life estate, but which he saw fit to impose in the event that Bertha Fulton should desire to use and occupy the premises.

He also provided that upon noncompliance with any of said conditions, or upon her death, or when she should see fit to vacate the premises, the premises should be sold by his executors and distribution of the

proceeds should be made in accordance with Item V of his will.

Counsel for both contesting parties have cited Sinnott's Estate, 53 Pa. Superior Ct. 383, and Davis Estate, 22 D. & C. 2d 755.

Paraphrasing what the late Judge Porter said in Sinnott's Estate, had testator directed that Mrs. Fulton should be permitted to occupy the premises, 118 West Evergreen Street, West Grove, Pennsylvania, for the term of her life if she so desired, there might possibly be room for argument that it was his intention to give her more than a mere privilege to occupy the residence, and that a life estate was to be created which it was within her power to alienate.

In such a case, as pointed out by Judge Porter, those who asserted that her right in the property was merely to occupy it for her personal residence, and that she could not while making her home elsewhere convey her right to another, would have been compelled to rely on a mere implication arising from the peculiar words used by the testator.

But, here, as in Sinnott's Estate, testator took pains to negative any suggestion that it was his intention that she should have the right to use the property by her grantee or lessee, or in any manner other than her personal residence by adding a final condition, to wit: "upon noncompliance with any of said conditions, or upon her death, or when she vacates said premises, I direct my Executors to sell the said real estate."

As stated in Sinnott's Estate:

". . . The direction to the executors . . . confirms the view, that the testator had clearly in his mind the intention to give [Mrs. Fulton] the privilege of living at the residence, and that when she no longer continued to personally reside there that the place should be sold; that intention he expressed in words which admit of no misunderstanding, or doubt. The enjoyment by the

widow of the right to occupy the residence depends upon the expressed condition that she shall continue to there reside. This was undoubtedly an incumbrance or charge upon the title, . . . but an encumbrance is not necessarily an estate in land . . ."

However, the subject estate differs from Sinnott's Estate, in that here there is no provision that she, may occupy the premises "rent free." Instead testator took occasion to impose the condition that during the occupancy by Mrs. Fulton "she shall pay all the expenses of maintaining and insuring said premises, the land taxes and other taxes and *assessments* thereon which may accrue or become payable during her life."

This condition, in the opinion of the court, contemplates that she might desire to occupy the premises for the longer of alternative durations.

In Davis Estate, 22 D. & C. 2d 755, 758, Judge Taxis, in construing section fifth of decedent's will which provided " '. . . at the end of said two year period she shall have the right to use and occupy either or both of said properties until her decease, free of rent, but after the expiration of said two year period, all such costs of maintenance and upkeep and all charges and assessments thereon during such occupancy shall be assumed and paid for by her, in relief of my estate, and in the event of her failure to properly maintain any such occupied property or properties and to pay all charges and assessments when due, the Corporate Trustee shall make such payments. . .' "

The beneficiary, having advised the executors that she did desire to occupy one of the properties, to wit: The Birchrunville Farm, Judge Taxis held:

"I hold that Miss Purcell, now Mrs. Clegg has no estate with respect to the farm property, since the mere right to use and occupy real estate when coupled with the provision that such real estate shall be sold if the person having such right ceases to occupy the

real estate confers a mere license to occupy upon such person, and not an estate."

In reaching this conclusion Judge Taxis cited Sinnott's Estate as being directly in point.

We conclude that the interest of Bertha Fulton in "premises" 118 West Evergreen Street, West Grove, Pennsylvania, is other than a life estate.

Notwithstanding such conclusion we feel that, absent a life estate, we must determine whether or not, considering the will as a whole, and the facts as stipulated, she is entitled to receive and convert to her own use, income in the nature of rents which she may be able to derive from a portion of the "premises" *while she is occupying it.*

In the opinion of this court, certain admitted facts are relevant to such a consideration.

On or about April 17, 1955, Bertha Fulton, a widow, and niece of C. Harry Spencer, gave up her home in New London, Chester County, Pennsylvania, sold all of her furniture excepting a few miscellaneous pieces and at the request of decedent went to keep house for him at his residence, 118 West Evergreen Street, West Grove.

There was nothing meretricious in such relationship.

At or about the time Bertha Fulton moved into decedent's home, he, the decedent, caused to be built an additional bedroom on the first floor for the use of Bertha Fulton.

Bertha Fulton, now 78 years of age, was then about 71 years of age.

Under the American experience tables of mortality, Bertha Fulton has a present life expectancy of 5.11 years.

At the time that Bertha Fulton came to live with decedent, the second floor of the premises, consisting of three rooms and a bath, was rented by decedent for a monthly rental of $65, plus $5 per month for garage

space, and continued to be so rented until decedent's death, and is now so rented.

On or about November 7, 1955, the Borough Council of the Borough of West Grove initiated a discussion with representatives of Lanning Sanitary Engineering Company and with bond counsel concerning the construction of a sewer plant for the Borough of West Grove.

The assessment and estimated installation costs for premises, 118 West Evergreen Street, will amount to at least $932.

Decedent, having on December 3, 1955, executed his will, on May 29, 1956, he executed a codicil by the terms of which he provided, inter alia, a pecuniary legacy for Bertha Fulton in a gross amount of $1,000 in addition to her share in the residuary estate.

Decedent and Bertha Fulton continued to live on the first floor of the premises, consisting of a living room, dining room, kitchen, decedent's bedroom and bath, and the additional bedroom added for Mrs. Fulton, uninterruptedly until Mr. Spencer's death on June 6, 1961.

Having imposed upon Bertha Fulton as a condition of her continuing to occupy the premises, "that she shall pay *all* the expenses of maintaining and insuring *said premises*, the land taxes and other taxes and assessments thereon which may accrue or become payable during her life," we find a reasonable construction of the will, as entitling her to receive, and convert to her own use, any rentals from any portion of *the premises*, leases for which existed prior to and at the time of decedent's death, during such period as she elects to occupy the premises, subject to such conditions, and that any such benefits terminate upon her election to no longer occupy the same.

Notwithstanding the fact that we find no life estate for Bertha Fulton was created by decedent's will, we do conclude and decree that Bertha Fulton, under the

language of decedent's will considered as a whole and the facts as found, is entitled to receive and convert to her own use the rents from said apartment so long as she, Bertha Fulton, continues to occupy the premises and comply with the conditions in the decedent's will.

(3) *Is Bertha Fulton liable for the said sewer assessment, the connection charge, and the construction of the connecting line from the curb to the dwelling on said premises?*

Counsel for Bertha Fulton contends that section 12(2) of the Principal and Income Act of July 3, 1947, P.L. 1283, as amended, is applicable to the question before this court.

Section 11 of the Principal and Income Act of 1947 covers expenses in trust estates.

Section 12 covers expenses in non-trust estates.

Section 12(2) provides:

"The special taxes or assessments for an improvement, representing an addition of value to property, forming part of the principal, shall be paid by the tenant, where such improvement cannot reasonably be expected to outlast the estate of the tenant. In all other cases a portion thereof only shall be paid by the tenant, while the remainder shall be paid by the remaindermen. Such portion shall be ascertained by taking that percentage of the total which is found by dividing the present value of the tenant's estate by the present value of an estate of the same form as that of the tenant, except that it is limited for a period corresponding to the reasonably expected duration of the improvement. The computation of present values of the estates shall be made on the expectancy basis set forth in the American experience tables of mortality and no other evidence of duration of expectancy shall be considered."

It has been stipulated that Bertha Fulton is now 78 years of age, and according to the American experience tables has a life expectancy of 5.11 years.

There is no testimony before this court as to the expected duration of the improvement, to wit: a municipal sewer installation.

This court is of opinion, however that the provisions of the Principal and Income Act are not applicable inasmuch as one of the expressed conditions in Item IV of decedent's will is that Bertha Fulton shall pay, inter alia, "assessments thereon which may accrue or become payable during her life, and, upon noncompliance with ... said conditions ... I direct my Executors to sell the said real estate."

We find no occasion to cite authorities in support of this conclusion.

We do conclude that Bertha Fulton, if occupying said premises at the time of any sewer assessment, is liable for said sewer assessment, the connection charge, and the construction of the connecting line from the curb to the dwelling on said premises.

Judgment is herewith entered in accordance with the foregoing decrees.